CHARLES E. MAYER v. MARY MATILDA WATERS, *as Administratrix of the estate of Moses Waters, deceased.*

1. MILITARY RESERVATION — *Building Not a Part of Realty.* Buildings erected on a military reservation by a post-trader, under authority from the war department, for the purposes of trade, do not become a part of the realty, and the owner, when he ceases to be post-trader, may remove and dispose of the same as his own property.

2. BUILDING, *Erected by Post-Trader — Regulations.* The military authorities are invested with power to prescribe rules and regulations for the erection, maintenance and removal of buildings erected by a post-trader on a reservation ; but such rules and regulations when made are subject to waiver and modification.

3. TRADER — *Liable for Rent.* A formal regulation was made that an owner could not sub-let such buildings to another without permission of the military authorities, and one who was an owner of build-

ings that had been erected by a post-trader on a military reservation leased the same to a trader for a stipulated rental, without express permission but with the knowledge and acquiescence of the military authorities, and the trader occupied the same and paid rent to the owner for about four years, when an order was made by the commanding officer that the owner should remove the buildings within a reasonable time. The order was not enforced, but the trader, with the knowledge of the officers, was permitted to use the building as before. On account of this order, the trader declined to pay rent to the owner, although he continued in the uninterrupted possession of the buildings, with full knowledge that the owner demanded the payment of rent. *Held,* That the action of the officers did not relieve the trader from liability to the owner for the use and occupation of the buildings.

*Error from Geary District Court.*

THE opinion contains a sufficient statement of the case.

*J. R. McClure,* for plaintiff in error.
*Humphrey & Humphrey,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Charles E. Mayer brought this action against Moses Waters to recover $1,770, alleged to be due for the use and occupation of certain buildings owned by the plaintiff, and situate on the Fort Riley military reservation, consisting of a store-building, a club-house, and a residence. On November 25, 1879, Moses Waters, who was then, and since then has been, the duly-appointed post-trader at the Fort Riley military reservation, entered into a written lease with Charles E. Mayer, the owner of the buildings, for a term of one year from April 1, 1880, at a rental of $30 per month, payable in quarterly installments. Waters took possession under this agreement, and although no written lease was afterward executed, he continued to occupy and use the buildings as post-trader until the commencement of this action, and paid rent for the same until February 1, 1883. After that time, he declined to make any further payment, claiming that certain military orders and proceedings which had been had relieved him of liability to Mayer for the use

of his buildings.  In June, 1883, he applied to the post council of administration, at Fort Riley, for the appointment of a board of officers to appraise the value of the buildings occupied and used by him, stating that they were in need of repairs, and that, unless he could purchase them at a fair price, he must request that the owner be directed to remove them, so that he could erect in their places such buildings as his business required.  The application was forwarded by the post commander to the headquarters of the department of the Missouri, and General Pope, who was in command, returned the same with an indorsement directing the commanding officer at Fort Riley to cause the owner of the buildings to remove them from the reservation within a reasonable time, and that he could not be allowed to rent them.  Moses Waters was informed by the post commander of this decision, and that Mayer would have a reasonable time to remove the buildings, but that Waters would be allowed to occupy the same until further orders.  Mayer had no notice of this application, or of the proceedings thereon, until after the same had been taken, nor until September 20, 1883.

The case was submitted to the court, without a jury, on oral and documentary evidence, and the court found that Mayer was entitled to recover rent for the use of his premises from February 1, 1883, to September 20, 1883, when he received notice of the military proceedings aforesaid, at the rate of $30 per month, but that the plaintiff was not entitled to recover for the use of the premises after receiving notice of the proceedings had by the military authorities.  Each of the parties excepted to the findings and judgment of the court, and both are here alleging error.  It is insisted on behalf of Waters that under an act of Congress and certain military regulations, Mayer was without authority over the buildings, or to collect rent for the same, and as he could not lawfully collect rent, Waters was not legally liable for their use and occupation. Congress has enacted " That every military post may have one trader, to be appointed by the secretary of war, on the recommendation of the council of administration, approved

by the commanding officer, who shall be subject in all respects to the rules and regulations for the government of the army." (19 U. S. Stat. at Large, 100.) Among the rules and regulations for the government of the army are found the following:

"Post-traders will actually carry on the business themselves, and will habitually reside at the station to which they are appointed. They will not farm out, sub-let, transfer, sell or assign their business to others.

"Post-traders will be permitted to erect buildings for the purpose of carrying on their business upon such part of the military reservation or post where they are assigned as the commanding officer may direct. Such buildings will be in convenient reach of the garrison.

"When a trader is removed from his post, he has a right to remove and dispose of the material of the buildings erected by him as his own property. He cannot lease or sell his buildings to another post-trader without the permission of the military authorities; but such permission would have the same force as a license to a new post-trader to erect such a building at that spot."

It is urged that Mayer had leased the buildings when he was not a post-trader, and also without license from the military authorities; and this being in violation of the regulations, he had no right to collect rent from Waters or any one else. It is true that Mayer was not a post-trader when the original lease was executed, nor has he held that position since that time; and it is also true, that he never received from the military authorities express permission to rent the buildings. It appears that the buildings were originally erected by Robert Wilson, a post-trader at Fort Riley, under due license from the war department. He sold them to Henry F. Mayer, who was also post-trader at the same place, and Henry F. Mayer in turn sold them to his son, the plaintiff, in 1876; but the plaintiff was not then, and never has been, a post-trader at Fort Riley, although he was the partner of one Mc-Gonegal, who was the post-trader for the years 1871 and 1872.

We think that Waters was liable to the plaintiff for the use and occupation of the buildings, both before and after the

6 — 45 KAS.

military proceedings hereinbefore referred to.  This is not a controversy between the United States and the plaintiff, and no step taken has divested the plaintiff of the ownership of the buildings occupied and used by Waters.  The military authorities have full power to regulate the erection, maintenance and removal of buildings used for carrying on the business of a post-trader, and to prohibit the assignment and sub-letting of the business to another; but the strict observance of the rules may be waived by the government, and the failure of the owner of the buildings to conform to these rules and regulations does not change the ownership of the buildings or relieve a party who has taken possession of the same under a lease from the owner from paying for their use.  It does not appear that direct permission was given for the lease or transfer of the buildings from the original owner to the several parties through whose hands they passed; but it does appear that the transfers were made with the knowledge and acquiescence of the military authorities, and it is conceded that the plaintiff never knew there was any objection to his renting these buildings until he received notice of the proceedings that were taken in reference to the removal of the same.  These proceedings were had at the instance of Waters, and without any notice to the plaintiff. · The officers of the department are not vested with power to appropriate such property for the use of the government, and the proceedings taken did not change the relation existing between Mayer and Waters.  The buildings were personal property when they were erected, and remained such until this action was begun.  It has been held by the attorney general of the United States that—

"Buildings erected by post-traders on a military reserve, in conformity to this order, are erected for the mutual benefit of the government and the trader, and are not to be regarded as buildings would be if erected by trespassers, or even by tenants under leases in which no provision is made therefor. They are erected under a license from the government, and for the mutual benefit of both parties.  Under these circum-

stances, I am of opinion that, by the proper construction of the license, these buildings were not intended to become a part of the realty after their erection, but were to continue the property of the traders, and, therefore, when a trader is removed from his post, I have no doubt that he has a right to remove the building from the place where it was erected, and, when removed, he can dispose of the materials as his own property." (14 Op. Attys. Gen. 125.)

It was held in the same opinion that such license did not authorize a lease or conveyance of the buildings to others for their occupation and use, without the permission of the military authorities; that the right was confined solely to the removing of the buildings from the premises. The officers had full authority to order the removal of the buildings, and to enforce such order; but so long as they permitted the buildings to remain upon the reservation, they were without authority to relieve the trader from paying for their use and occupation. The order made was that Mayer should remove the buildings from the reservation within a reasonable time; but instead of enforcing the regulation, or the order, the officers permitted the buildings to remain until the commencement of this action. The buildings have been used continuously for the business of the post-trader, and it does not appear that there was any necessity for their vacation, or that the trader was using them for any improper purpose. This continued use, with full knowledge of the ownership and rights of the plaintiff, must be regarded as a waiver of the regulation, and a sufficient permission for the leasing of the buildings to Waters. This seems to have been the view of the war department, as the adjutant general, in response to a letter addressed to him with reference to the occupancy of these buildings, said: "If the trader occupies buildings belonging to you, without being willing to purchase them, or pay rent to you as you demand, you should seek a remedy in the civil courts." As late as January 24, 1888, the commanding officer at Fort Riley, in response to an application for a military order to compel the post-trader to pay for the use of the buildings, stated: "It is not understood why Mr. Mayer does

not have recourse to process of civil law to adjust his rights in this case. He should be informed that there is a special reason for this, in view of the control of the civil authorities on the reservation at Fort Riley." In this case, Waters first entered into a written lease for the property, and continued to pay rent thereon to plaintiff for about four years, thereby recognizing the title and ownership of plaintiff, and that the relationship of landlord and tenant existed between them. He has remained in undisturbed possession of the buildings ever since, with full knowledge that compensation for their use was demanded by plaintiff, and he cannot now be permitted to deny the title of the landlord, or repudiate his implied liability for the use and occupation of the buildings. The fact that he has latterly refused to pay rent for the use of Mayer's property, will not terminate his relation as tenant, or relieve him from liability for the use and occupation of the property. (*Thompson v. Sanborn*, 52 Mich. 141; Tayl. Land. and Ten., ch. 13, § 3.)

We are asked to render such judgment in the case as the court below should have rendered in case of a reversal; but as the case was submitted upon testimony which is not harmonious, and as the condition of the buildings and the amount of the repairs that have been expended have not been stated or agreed upon, we are unable to direct the judgment that should be entered. The judgment of the court below will, therefore, be reversed, and the cause remanded for a new trial.

All the Justices concurring.